**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON CLARKE and MICHELLE DEVERA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE KRAFT HEINZ COMPANY,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiffs Aaron Clarke and Michelle deVera ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant The Kraft Heinz Company ("Kraft" or "Defendant") for making, marketing, and distributing its Kraft® Macaroni & Cheese products (hereinafter, the "Products"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

**NATURE OF ACTION**

1.  This is a class action lawsuit concerning the presence of harmful chemicals known as ortho-phthalates ("phthalates") in Defendant's popular Macaroni & Cheese products (the "Products"). For years, Defendant has been aware that its Products contain phthalates but has refused to take steps to remove these chemicals from the Products. Instead, Defendant has chosen to prioritize profits over the safety of the consuming public.

2.  Plaintiffs bring claims individually and on behalf of a class of all other similarly situated purchasers of the Products for breach of implied warranty and fraud.

**PARTIES**

3.  Plaintiff Aaron Clarke is, and at all times relevant to this action has been, a resident of San Francisco, California. Within the last four months, Mr. Clarke purchased Kraft Macaroni & Cheese from a Safeway store located in San Francisco, California. Had Defendant disclosed on the label that the Product contained phthalates, and the harms that phthalates can cause, Mr. Clarke would have been aware of those facts and would not have purchased the products, or at the very least, would have paid significantly less for them. After learning of the presence of phthalates in the Product, Mr. Clarke stopped purchasing the Product. However, Mr. Clarke regularly visits stores where Defendant's products are sold and remains interested in purchasing safe macaroni and cheese products. He would consider purchasing Defendant's Product in the future if Defendant removed the phthalates.

4.  Plaintiff Michelle deVera, is, and at all times relevant to this action has been, a resident of Fremont, California. Within the last six months, Ms. deVera purchased Kraft Macaroni & Cheese from Walmart and Safeway stores located in Union City and Fremont, California. Had

Defendant disclosed on the label that the Product contained phthalates, and the harms that phthalates can cause, Ms. deVera would have been aware of those facts and would not have purchased the products, or at the very least, would have paid significantly less for them. After learning of the presence of phthalates in the Product, Ms. deVera stopped purchasing the Product. However, Ms. deVera regularly visits stores where Defendant's products are sold and remains interested in purchasing safe macaroni and cheese products. She would consider purchasing Defendant's Product in the future if Defendant removed the phthalates.

5. Defendant The Kraft Heinz Company is a Pennsylvania corporation with its principal place of 1 PPG Place, Suite 3400, Pittsburgh, PA. Defendant manufactures, markets, and distributes the Products throughout the United States.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

7. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within California such that Defendant has significant, continuous, and pervasive contacts with the State of California.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District, a substantial part of the events giving rise to Plaintiffs' claims took place within this District because Plaintiffs purchased the Products in this District and were therefore injured in this District.

## COMMON FACTUAL ALLEGATIONS

**A.  Background on Phthalates**

9. Phthalates are synthetic chemicals used to make plastics flexible. Phthalates have powerful defenders, including Exxon Mobil, a leading producer of the chemical.

10. Phthalates can migrate into food products during processing, packaging, and preparation. Although not intentionally added to food, phthalates are "indirect" food additives

because they escape from food contact materials, including processing equipment, such as plastic tubing, conveyor belts or gloves, as well as food packaging materials.  When added to these materials as plasticizers, phthalates make up 30-50% of the composite material, but they continually shed onto anything that they touch, such as food products because they are not chemically bound to the plastics and vinyl.

11. Because phthalates bind with fats, they tend to be found at higher levels in highly processed or fatty foods, such as the Products.

12. Within the scientific community, phthalates are called "endocrine disruptors" because they affect the body's hormones by mimicking them or blocking them.  Specifically, they interfere with the body's natural levels of estrogen, testosterone, and other hormones, which is why they are called "disruptors."

13. Unfortunately, researchers have proved that, unlike other chemicals, phthalates appear to have more serious effects at lower levels than at higher levels.  Although it is typically assumed that the higher the dose or exposure, the greater the harm, endocrine disruptors play by different rules.

14. Indeed, the director of the National Institute of Environmental Health Sciences, Linda Birnbaum, stated that chemical manufacturers are asking "old questions" when they test for safety even though "science has moved on."

15. The problem posed by phthalates is that hormones can increase the risk of some cancers, regardless of whether those hormones are natural or synthetic.  Too much or too little of a hormone can be harmful.  By way of example, research shows that animals exposed to phthalates are more likely to develop liver cancer, kidney cancer, and male reproductive organ damage. Studies also show associations between children's exposure to phthalates and the risk of asthma, allergies and bronchial obstruction.

16. Researchers at Mount Sinai also found a link between obesity and phthalates.  They found that among overweight girls ages 6 to 8, the higher the concentration of certain phthalates in their urine, the higher their body mass index (BMI).  A study among Danish children ages 4 to 9 found that the higher the concentration of phthalates, the shorter the child.

17. Even short-term exposure to phthalates has now been linked to developmental deficits. Researchers found that children in intensive care units who were exposed to the phthalates through plastic tubing and catheters had 18 times as much of the chemicals in their blood compared to children who had not spent time in the ICU. Four years later, the children who had been exposed to the phthalates had more problems with attention and motor coordination. The researchers found that the phthalates caused these problems regardless of medical complications or treatments.

18. Parents must also be wary of prenatal exposure to phthalates. Several studies that have tested phthalate levels in women in their third trimester of pregnancy have found health effects in the infants, toddlers, and older children of the mothers with the highest levels. A 2011 study found that six-month-old boys whose mothers had the highest phthalate levels scored lower on brain and motor development tests.

19. Research suggests that boys exposed to phthalates while in the womb may be more likely to develop smaller genitals and incomplete descent of the testicles. Boys who are born with undescended testicles are 2-8 times more likely to develop testicular cancer later on than men born with both testicles descended. Studies by Harvard researchers have shown phthalates may alter human sperm DNA and semen quality.

20. Columbia University researchers discovered that three-year-olds with high prenatal exposure to two types of phthalates were more likely to have motor delays. They also reported that three phthalates were linked to certain behavior problems in three-year-olds. One phthalate in the study was linked to lower mental development in girls.

21. It therefore comes as no surprise that, as of February 2009, children's toys and child care products sold in the U.S (such as teething rings and plastic books) cannot contain certain phthalates. The ban on those phthalates is the result of a law passed in 2008, the Consumer Product Safety Improvement Act. The law permanently banned these phthalates.

22. A few months before the 2008 bill passed, major retailers such as Wal-Mart, Target, and Babies "R" Us promised to remove or severely restrict children's products containing

phthalates by the end of 2008.  That provided added incentives for major companies making teething rings and other soft plastic products to stop using phthalates.

23. The ban in the U.S. followed similar bans in other countries.  In 2006, the European Union banned the use of certain phthalates in toys that may be placed in the mouth by children younger than 3 years old.  Fourteen other countries, including Japan, Argentina, and Mexico, had also banned phthalates from children's toys prior to the U.S.

24. According to scientists, "[t]here is strong evidence that phthalates block the production of the hormone testosterone.  'That means there is less testosterone available to the developing male fetus, and since testosterone is absolutely vital to build his reproductive organs, the worry is that you will get malformations and other kinds of problems that translate to health effects later,' Dr. Patisaul said. Those include 'infertility, low sperm counts, altered male reproductive behavior and changes in the area of the brain that are important for sex differences between men and women,' as well as a heightened risk of testicular cancer later on, she said." *Id.*

25. "'If you asked most scientists about the top 10 or 20 endocrine-disrupting chemicals they worry about, phthalates would be on that list,' Dr. Patisaul said.  'We have an enormous amount of data.'" *Id.*

**B. Defendant's Macaroni & Cheese Products Contain Phthalates**

26. Independent testing commissioned by the Coalition for Safer Food Processing & Packaging showed that, among 30 total products tested, 29 out of the 30 cheese products contained a form of phthalates— and that eight of the nine Kraft Macaroni & Cheese products tested contained phthalates.

27. In particular, average phthalate levels were more than four times higher in macaroni and cheese powder samples than in hard blocks and other natural cheese.  DEHP, the most widely restricted phthalate, was found more often and at a much higher average concentration than any other phthalate, among all the cheese products tested.

28. According to Environmental Health News (ehn.org), "Phthalate concentrations in Kraft products like mac and cheese powder and processed cheese range from 0.2 mg/kg (or parts

per million, ppm) to 2.5 ppm.  The US Environmental Protection Agency estimates that a safe dose for phthalates is between 0.1 and 0.01 ppm…"[1]

29. For years, Kraft has known about the presence of phthalates in its Products.  Since at least 2017, consumer advocacy groups have called on Kraft to take steps to remove these chemicals from its Products, yet Kraft has steadfastly refused to do so.

30. Instead, in 2017, Kraft responded that it does not purposely add phthalates to the Products and that any phthalates found in its Macaroni & Cheese is merely present in "trace" amounts.  These comments, while inaccurately downplaying the significance of the phthalates found in the Products, demonstrate that, at minimum, Kraft has known about this issue since 2017.

31. Acknowledging the harmfulness of phthalates, one of Defendant's main competitors in the Macaroni & Cheese industry—Annie's—has pledged to take steps to remove these harmful chemicals from its macaroni & cheese products.[2]  In other words, the inclusion of phthalates in the products is entirely preventable.  And yet, putting its profits above the health of its customers, Defendant has refused to take steps to prevent the adulteration of its products with phthalates.

## CLASS REPRESENTATION ALLEGATIONS

32. Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Products (the "Class").  Excluded from the Class are persons who made such purchases for purpose of resale.

33. Plaintiffs also seek to represent a subclass of all Class Members who purchased the Products in California (the "California Subclass").

34. At this time, Plaintiffs do not know the exact number of members of the aforementioned Class and Subclasses ("Class Members" and "Subclass Members," respectively); however, given the nature of the claims and the number of retail stores in the United States selling the Products, Plaintiffs believe that Class and Subclass members are so numerous that joinder of all members is impracticable.

---

[1] https://www.ehn.org/phthalates-in-macaroni-and-cheese-2640037202.html
[2] https://www.nytimes.com/2021/02/19/business/annies-mac-cheese-plastic-phthalates.html

CLASS ACTION COMPLAINT                                                                               6

35. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

    (a) whether Defendant failed to disclose material facts concerning the Products;

    (b) whether Defendant breached implied warranties to Plaintiffs and the Class;

    (c) whether Plaintiffs and the Class have sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages.

36. Plaintiffs' claims are typical of those of the Class because Plaintiffs, like all members of the Class, purchased, in a typical consumer setting, Defendant's Products, and Plaintiffs sustained damages from Defendant's wrongful conduct.

37. Plaintiffs will fairly and adequately protect the interests of the Class and Subclasses and have retained counsel that is experienced in litigating complex class actions. Plaintiffs have no interests which conflict with those of the Class or the Subclasses.

38. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

39. The prosecution of separate actions by members of the Class and the Subclasses would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class and the Subclasses even where certain Class or Subclass members are not parties to such actions.

**COUNT I**
**(Breach of Implied Warranty Under the Song-Beverly Act, Cal. Civ. Code § 1790 *et seq*. and California Commercial Code § 2314)**

40. Plaintiffs incorporate by reference the foregoing paragraphs of Complaint as if fully stated herein.

41. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

42. Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*, and California Commercial Code § 2314, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable, as defined in that Act.  In addition, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

43. The Products at issue here are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

44. Plaintiffs and the Class members who purchased one or more of the Products are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

45. Defendant is in the business of manufacturing, assembling, producing and/or selling the Products to retail buyers, and is therefore a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

46. Defendant impliedly warranted to retail buyers that the Products were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Products are used.  For a consumer good to be "merchantable" under the Act, it must satisfy both of those elements. Defendant breached the implied warranties because the Products were unsafe and defective. Therefore, the Products would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used.

47. Plaintiffs and Class members purchased the Products in reliance upon Defendant's skill and judgment in properly packaging and labeling the Products.

48. The Products were not altered by Plaintiff or Class members.

49. The Products were defective at the time of sale when they left the exclusive control of Defendant.  The defect described in this complaint was latent in the product and not discoverable at the time of sale.

50. Defendant knew that the Product would be purchased and used without additional testing by Plaintiffs and Class members.

51. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because they would not have purchased the Products if they knew the truth about the products, namely, that they contained harmful chemicals known as phthalates.

## COUNT II
### (Fraud)

52. Plaintiffs incorporate by reference the foregoing paragraphs of Complaint as if fully stated herein.

53. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

54. As discussed above, Defendant failed to disclose material facts about the Products, including but not limited to the fact that the Products contain harmful chemicals known as phthalates.

55. The omissions made by Defendant, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase the Products.

56. The fraudulent actions of Defendant caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a. For an order certifying the nationwide Class and the Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass members;

  b. For an order declaring the Defendant's conduct violates the statutes referenced herein;

  c. For an order finding in favor of Plaintiffs, the nationwide Class, and the Subclass on all counts asserted herein;

  d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

  e. For prejudgment interest on all amounts awarded;

  f. For an order of restitution and all other forms of equitable monetary relief;

  g. For an order requiring Defendant to undertake a corrective advertising campaign;

  h. For injunctive relief as pleaded or as the Court may deem proper; and

  i. For an order awarding Plaintiffs and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury of all issues so triable.

Dated: April 5, 2021        Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*
   L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

*Counsel for Plaintiffs*

CLASS ACTION COMPLAINT               10